454 A.2d 103

**ALLEGHENY HOME IMPROVEMENT CORPORATION,**

**v.**

**Charles FRANKLIN and Rene Franklin, his wife, Appellants.**

Superior Court of Pennsylvania.

Argued April 27, 1982.

Filed Dec. 17, 1982.

Petition for Allowance of Appeal Denied March 22, 1983.

226

W. Thomas Laffey, Jr., Pittsburgh, for appellants.

Charles Means, Pittsburgh, for appellee.

Before ROWLEY, BECK and MONTEMURO, JJ.

BECK, Judge:

Homeowners Charles and Rene Franklin (Appellants) appeal an order of the Court of Common Pleas of Allegheny County which confirmed an arbitrator's amended award in favor of construction contractor Allegheny Home Improvement Corporation (Appellee) and provided that upon praecipe to the court prothonotary judgment would be entered against Appellants in the amount of three thousand five hundred and sixty-six dollars ($3,566.00). We affirm.

On July 5, 1977, Appellants and Appellee signed a standard short form agreement for small construction contracts ("Contract") supplied by the American Institute of Architects. Under the Contract Appellee agreed to remodel the bathroom of Appellants' home according to stipulated specifications and Appellants agreed to remit installment payments to Appellee upon determination by an architect that Appellee's construction work was not defective. Thereafter, Appellants made payment to Appellee in the amount of $14,142.00 but refused to tender the final installment of $4,401.00, alleging poor workmanship and the installation of a flawed bathtub.

Pursuant to Article 14 ("Arbitration Clause")[1] of their Contract Appellants and Appellee submitted their payment

---

1. Article 14 ("Arbitration Clause") of the Contract states:
   All claims or disputes arising out of this Contract or the breach thereof shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. Notice of the demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association and shall be made within a reasonable time after the dispute has arisen.

controversy to an arbitrator.[2] The arbitrator's initial award stated that Appellants should pay Appellee the sum of $3,500.00 upon receiving from Appellee a release of all liens and the manufacturer's warranty for the flawed bathtub. The award further provided that the costs of arbitration would be borne equally by the parties.

Subsequently, after the parties had filed a "no-lien" agreement in the Court of Common Pleas of Allegheny County, the arbitrator issued an amended award requiring that Appellants make immediate payment to Appellee of $3,500.00 and that Appellee make immediate tender to Appellants of all available warranty information concerning the flawed bathtub and steam unit. The amended award again provided that the costs of arbitration would be evenly divided between the parties and stated that $66.00 representing Appellants' "one half of the costs"[3] was payable immediately.

Thereafter, on October 16, 1980, in the Court of Common Pleas of Allegheny County Appellee filed a "Petition to

---

**2.** The parties agree that the Contract Arbitration Clause provides for common law arbitration and is not governed by any statutory provisions. *Campbell-Ellsworth, Inc. v. Holy Trinity Serbian Orthodox Church-School Congregation,* 233 Pa.Super.Ct. 126, 130, 336 A.2d 346, 347 (1975), *allocatur denied,* June 12, 1975; *Smith v. Safeguard Mutual Insurance Co.,* 212 Pa.Super.Ct. 83, 85–86, 239 A.2d 824, 826 (1968).

**3.** Section 48 ("Administrative Fees") of the Construction Industry Arbitration Rules of the American Arbitration Association states in pertinent part that the American Arbitration Association

shall prescribe an administrative fee schedule and a refund schedule to compensate it for the cost of providing administrative services . . . .

The administrative fees shall be advanced by the initiating party or parties in accordance with the administrative fee schedule, subject to final apportionment by the arbitrator in the award.

By a letter of April 18, 1980, the American Arbitration Association informed counsel for both parties that since the arbitrator's award provided that the costs would be shared equally by the parties, Appellants were to pay Appellee the sum of $66.00, one half of the $132.00 which Appellee, as the initiating party, had advanced in accordance with Section 48, *supra.*

The arbitrator's amended award thus referred to the specific dollar amount ($66.00) which was Appellants' portion of the costs.

Confirm Award of Arbitrator." That same day Appellee ordered the cause for argument, and the court entered an order scheduling the matter for hearing on October 31, 1980. On October 31, 1980, Appellants filed an answer to Appellee's petition, and the court, upon "due consideration" of Appellee's petition,

> ordered ... the Award of Arbitrator and Amended Award ... approved and confirmed with judgment to be entered thereon in favor of ... Allegheny Home Improvement Corporation, in the sum of Three Thousand Five Hundred Sixty-Six ($3,566.00) Dollars and against ... Charles Franklin and Rene Franklin ... upon Praecipe to the Prothonotary of this Court.

From the order confirming the arbitrator's award Appellants have appealed to this Court, arguing (1) that Appellee's Contract rights cannot be enforced without an action in assumpsit; (2) that Appellee's use of a petition rather than a complaint violates Pa.R.C.P. No. 1007 and bars consideration of Appellee's claim, and (3) that assuming arguendo a petition can initiate the processing of Appellee's claim, Appellee has failed to perform the duties of a petitioner (Pa.R.C.P. No. 209) and its petition must therefore be dismissed.[4]

Asserting that the Contract Arbitration Clause does not contain a provision governing entry of judgment, Appellants contend that Appellee cannot obtain judgment on a common law arbitration award without bringing an action in assumpsit.

The Contract Arbitration Clause stipulates that disputes submitted to arbitration are to be decided according to the Construction Industry Rules ("Rules") of the American Arbitration Association.[5] Section 47 ("Applications to

---

**4.** As a corollary to their third argument Appellants assert that because Appellee did not take depositions, Appellee is deemed to have admitted the averments of Appellants' answer, and accordingly its petition must fail. For a discussion of Appellants' assertion, see *infra.*

**5.** Section 1 ("Agreement of Parties") of the Construction Industry Arbitration Rules states in pertinent part that "[t]he parties shall be

Court") of the Rules states in pertinent part that "[p]arties to these Rules shall be deemed to have consented that judgment upon the award rendered by the arbitrator(s) may be entered in any Federal or State Court having jurisdiction thereof."

Both the Supreme and Superior Courts of Pennsylvania have construed common law arbitration agreements with language similar to Section 47, *supra,* and have held that such language authorizes entry of judgment without prior recourse to an action in assumpsit. "[T]he parties may effectively provide, in their agreement to arbitrate, authority for entering judgment on the award." *Smith v. Safeguard Mutual Insurance Co.,* 212 Pa.Super.Ct. 83, 86, 239 A.2d 824, 826 (1968); *Gretz v. Esslinger's Inc.,* 416 Pa. 111, 114, 204 A.2d 754, 756 (1964); *Bartilucci v. Safeguard Mutual Insurance Co.,* 212 Pa.Super.Ct. 414, 416, 242 A.2d 916, 917 (1968).

■ Furthermore, "[i]t is the policy of the law to favor the settlement of disputes by arbitration and to promote the swift and orderly disposition of claims." *Children's Hospital of Philadelphia v. American Arbitration Association,* 231 Pa.Super.Ct. 230, 234, 331 A.2d 848, 850 (1974). The Supreme Court of Pennsylvania observed in *Gretz* that holding ineffective the entry of judgment provision of an arbitration clause would negate the parties' intent in including an arbitration clause in their contract. The entry of judgment "provision would be rendered useless, if plaintiff were to be required, after the arbitration proceedings, to sue in assumpsit just as though there had been no arbitration and no provision for arbitration." *Gretz* 416 Pa. at 114, 204 A.2d at 756.

■ Appellants' argument concerning Appellee's use of a petition, rather than a complaint, is nullified by this Court's determination that an action in assumpsit is unnecessary where an arbitration clause contains a procedure for

deemed to have made these Rules a part of their arbitration agreement whenever they have provided for arbitration under the Construction Industry Arbitration Rules."

entry of judgment. Appellants correctly maintain that Pa. R.C.P. No. 1007 does not provide for an action to be commenced by a petition. However, since Appellee is not required to bring an action to enforce the arbitrator's award, Appellee is not required to file a complaint.

Moreover, the filing of a petition to confirm an arbitrator's award has been sanctioned by both the Supreme and Superior Courts of Pennsylvania. In *Gretz* the plaintiff "filed a motion in the Court of Common Pleas of Philadelphia County to confirm the arbitration award and to have judgment entered thereon." *Id.*, 416 Pa. at 113, 204 A.2d at 755. In *Bartilucci* "[t]he appellees petitioned the lower court to confirm the award so that it might be reduced to judgment." *Id.* 212 Pa.Super.Ct. at 415, 242 A.2d at 917; *Campbell-Ellsworth, Inc. v. Holy Trinity Serbian Orthodox Church-School Congregation,* 233 Pa.Super.Ct. 126, 336 A.2d 346 (1975), *allocatur denied,* June 12, 1975; *Owens v. Concord Mutual Insurance Co.,* 210 Pa.Super.Ct. 235, 237, 232 A.2d 14, 15 (1967), *allocatur denied,* July 31, 1967. Additionally, in *Bartilucci* the *Gretz* opinion was cited approvingly as "a specific precedent for the procedure employed" to obtain judgment on the arbitrator's award. *Bartilucci* 212 Pa.Super.Ct. at 416, 242 A.2d at 917.

Finally, Appellants contend that Appellee's petition must be dismissed because Appellee has not complied with Pa.R. C.P. No. 209 which prescribes the obligations of a petitioner.

Rule 209 explains that within fifteen days of the filing and service of an answer to the moving party's petition, the moving party (here, Appellee) must either "[p]roceed by rule or by agreement of counsel to take depositions on disputed issues of fact" or "[o]rder the cause for argument on petition and answer." If the moving party fails to act, "the respondent (here, Appellants) may take a rule as of course on the moving party to show cause why [the moving party] should not proceed ...."

In the instant case Appellee filed its petition on October 16, 1980. That same day the trial court issued an order

scheduling the petition for hearing on October 31, 1980. Appellants assert that the trial court's action was premature because the fifteen-day period to which Rule 209 refers had not elapsed before the court acted. Citing *Shainline v. Alberti Builders, Inc.*, 266 Pa.Super.Ct. 129, 403 A.2d 577 (1979), and *Zinck v. Smashy's Auto Salvage, Inc.*, 250 Pa.Super.Ct. 553, 378 A.2d 1287 (1977), Appellants argue that "[t]here is no provision in [Rule 209] for shortcutting its operation . . . ." *Shainline*, 266 Pa.Super.Ct. at 137 n. 4, 403 A.2d at 580 n. 4 (quoting *Instapak Corp. v. S. Weisbrod Lamp & Shade Co.*, 248 Pa.Super.Ct. 176, 176 n. 8, 374 A.2d 1376, 1376 n. 8 (1977)). On page ten of their brief Appellants declare that "[t]he parties cannot be deprived of the full fifteen days by any action of the [c]ourt."

In so framing their argument Appellants have confused the two separate functions of Rule 209. The first function of Rule 209 is to protect the petitioner by affording time for discovery so that the petitioner can, if so inclined, adduce evidence to refute the factual averments in the respondent's answer.

When a respondent effectively denies material allegations in a petition . . . , the petitioner must support his position with . . . proof. The procedure for establishing such proof is provided by [Rule 209] . . . .

. . . To activate the rule, it is incumbent on the petitioner to take depositions or to order the cause for disposition on petition and answer in which event all factual averments in the answer are deemed admitted.

*Shainline* 266 Pa.Super.Ct. at 136–37, 403 A.2d at 580.

The second function of Rule 209 is to protect the respondent, if the petitioner fails to act during the fifteen-day period, by permitting the respondent, with impunity, to take a rule to show cause why the petitioner should not proceed.

Rule 209 was adopted to cure the dilemma confronting a respondent in counties which did not automatically list petitions for argument . . . . In those counties, when controlling facts were in controversy, the respondent was helpless to move the case to conclusion. If he set the

case down for argument, his action was treated as an admission of the facts stated in the petition. A respondent, therefore, had to sit by and await further action at the petitioner's pleasure. 1 Goodrich-Amram § 209(2). *Cheltenham National Bank v. George B. Henne & Co.,* 237 Pa.Super.Ct. 311, 314, 353 A.2d 59, 60 (1975). "[T]o expedite the proceedings, the respondent may, after 15 days, himself order the cause for argument on petition and answer, in which event . . . all averments of fact in the answer are deemed admitted." *Shainline* 266 Pa.Super.Ct. at 137, 403 A.2d at 580 (footnote deleted); *Maurice Goldstein Co. v. Margolin,* 248 Pa.Super.Ct. 162, 374 A.2d 1369 (1977).

▮ Therefore, contrary to Appellants' argument, expedited processing of a petition comports with the reason underlying the promulgation of Rule 209. Rule 209 has repeatedly been held not to abrogate Local Rules of Court which expedite the listing of petitions for argument as long as the petitioner is provided with an adequate opportunity to take depositions on disputed factual issues. *Lincoln Bank v. Kelly,* 282 Pa.Super.Ct. 261, 422 A.2d 1106 (1980) (Cavanaugh, J., concurring and dissenting); *Arthurs Travel Center, Inc. v. Alten,* 268 Pa.Super.Ct. 330, 408 A.2d 490 (1979), *allocatur granted,* November 21, 1979; *Instapak Corp.; Cheltenham National Bank.* "[T]he court [can] itself set a timetable for the taking of depositions and for decision . . . . The court must give notice of such a schedule, however." *Shainline* 266 Pa.Super.Ct. at 138 n. 5, 403 A.2d at 581 n. 5; *Nigrelli v. Cody,* 281 Pa.Super.Ct. 156, 421 A.2d 1195 (1980).

In the present case Appellee chose not to take depositions but rather, on the day Appellee filed its petition, Appellee also ordered the cause for argument on petition and answer by applying to the court's minute clerk for an argument date in accordance with Allegheny County Local Rule of Civil Procedure 209*1(a).[6] Thereafter, as Local Rule

6. Allegheny County Local Rule of Civil Procedure 209*1(a) states: "Any party may order the cause for argument by applying for a date

209*1(a) required, Appellee gave notice to Appellants of the argument date. Thus, Local Rule 209*1(a) effectively safeguarded both the recognized right of the petitioner (Appellee) to elect to obtain evidence through depositions and the recognized right of the respondents (Appellants) to a speedy disposition of the petition.

■ Appellants correctly maintain that under Rule 209 Appellee's decision to forego depositions is considered an admission of "the existence of all *facts* properly pleaded in [Appellants'] answer." *America Corp. v. Cascerceri,* 255 Pa.Super.Ct. 574, 580 n. 6, 389 A.2d 126, 129 n. 6 (1978) (emphasis added); *Shainline.*

■ In their answer Appellants allege (1) that Appellee must "bring a separate action [in assumpsit] to obtain judgment on the Award [of the arbitrator]"; (2) that the "Arbitrator was without jurisdiction to enter the Award and impose costs," and (3) that "the action in entering the Award ... constituted such irregularity ... as to deprive [Appellants] of a fair hearing, and ... resulted in ... an unjust, inequitable and unconscionable award." Because all of Appellants' allegations concern questions of law, not issues of fact, Appellee's failure to take depositions is not deemed an admission of Appellants' averments.

Moreover, attached to Appellee's petition were various exhibits including copies of the Contract between Appellee and Appellants; the arbitrator's original opinion and award; the arbitrator's amended award which substantially reiterated the terms of his original award; a letter of August 18, 1980, from the American Arbitration Association, explaining to the parties' attorneys the division of arbitration costs,[7] and the Construction Industry Arbitration Rules. With the aid of this documentary evidence which was not rebutted by Appellants' answer, the trial court properly determined that

and time to the minute clerk in the assignment room. Prompt written notice thereof shall be served by the party obtaining the date upon all other parties to the proceeding at least ten (10) days before the argument date."

7. See n. 3, *supra.*

the parties' Contract provided a procedure for enforcing the arbitrator's award without resort to an action in assumpsit [8] and empowered the arbitrator to assess costs against both parties.[9]

In addition, the trial court wisely observed that Appellants did not plead their third allegation "with even the slightest suggestion of specificity," offering no facts indicating irregularity in the arbitration proceedings. The heavy burden of proof placed on a party claiming to be aggrieved by some fault in the arbitration process was examined at length by this Court in *Mellon v. Travelers Insurance Co.*, 267 Pa.Super.Ct. 191, 195–96, 406 A.2d 759, 761 (1979):

Judicial review of common law arbitration awards is narrowly circumscribed .... Courts will not set aside an award because the arbitrators made mistakes of law or fact .... Rather, to set aside an award the court must find fraud, misconduct, corruption, or similar irregularity, leading to an unjust, inequitable, or unconscionable result .... Furthermore, to prevail on this ground, the appealing party must show actual fraud, involving collusion with one of the parties, or misconduct intended to create a fraudulent result .... An argument that the arbitrators were prejudiced or partial, or that they reached an award so unjust that it constitutes constructive fraud, will not be heeded .... Similarly, an 'irregularity' will not be found simply upon a showing that an incorrect result was reached ....

Appellants nonetheless argue that the award here typifies the kind of abuse the Supreme Court reserved for review in *Allstate Insurance Co. v. Fioravanti*, [451 Pa. 108, 116, 299 A.2d 585, 589 (1973) ]:

It is possible to hypothocate [sic] an arbitration award which imports such bad faith, ignorance of the law and indifference to the justice of the result as to cause us to

**8.** See discussion of Appellants' first argument on appeal, *supra.*

**9.** See n. 3, *supra.*

give consent to the phrase 'other irregularity' since it is the most definitionally elastic of the grounds for vacatur ....

The Supreme Court, however, has limited *Fioravanti*, holding that a showing that an award is 'blatantly at odds with the contract involved ... without more, cannot be a basis for a finding of such misconduct as would justify setting the award aside.' *Runewicz v. Keystone Insurance Co.*, [476 Pa. 456, 463, 383 A.2d 189, 193 (1978)].

■ Since Appellants have not pleaded any facts supporting their averment of irregularity and since Appellee's exhibits permit a finding that the arbitrator's award is consistent with the parties' Contract, Appellants' argument concerning irregularity must fail.

Accordingly, the order of the Court of Common Pleas of Allegheny County, dated October 31, 1980, confirming the arbitrator's award in favor of Appellee, is affirmed.