In re Beverly K. HACKLING, Debtors.

Beverly K. Hackling, Plaintiff,

v.

Midfirst Bank, Defendant.

Bankruptcy No. 97–23908T.
Adversary No. 97–2252.

United States Bankruptcy Court,
E.D. Pennsylvania,
Reading Division.

April 14, 1999.

Shawn P. Quinnan, Reading, PA, for plaintiff, Beverly K. Hackling.

Leon P. Haller, Purcell, Krug & Haller, Harrisburg, PA, for defendant, Midfirst Bank.

Frederick L. Reigle, Reading, PA, Chapter 13 Trustee.

### *OPINION*

THOMAS M. TWARDOWSKI,
Bankruptcy Judge.

Debtor filed this complaint under section 506 of the Bankruptcy Code, 11 U.S.C. § 506, seeking a determination of the extent and validity of the first mortgage lien held by Midfirst Bank ("Midfirst") against her residence. Specifically, Debtor desires to "strip down" Midfirst's mortgage to the fair market value of the residence. Midfirst maintains that its mortgage may not be modified due to 11 U.S.C. § 1322(b)(2), which prohibits the modification of the rights of a holder of a secured claim which is secured only by a security interest in real property that is the debtor's principal residence. For the reasons that follow, we find that Midfirst has not taken a security interest in property other than property that is Debtor's principal residence, and that therefore, Midfirst's mort-

gage is entitled to the protection of section 1322(b)(2).

We begin by setting forth the provisions of the mortgage in issue. Specifically, the mortgage provides that a security interest is taken in

> ... the buildings, improvements, and fixtures on said premises, as well as all additions or improvements now or hereafter made to said premises, streets, alleys, passages, ways, waters, water courses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging, or in any wise appertaining, and the reversions and remainders, rents, issues, and profits thereof...

Mortgage at 1. The mortgage also provides:

> To more fully protect the security of this Mortgage, the Mortgagor shall pay to the Mortgagee as trustee...:
>
> *(a)* A sum equal to ... the premiums that will next become due and payable on policies of fire and other hazard insurance, plus taxes, assessments...
>
> *(b)* The aggregate of the amounts payable pursuant to subparagraph (a) and those payable on this debt shall be paid in a single payment each month, to be applied to the following items in the order stated:
>
> *(I)* ground rents, taxes, assessments, sewer and water rents, fire and other hazard insurance premiums;
>
> *(II)* interest on this debt; and
>
> *(III)* amortization of the principal of this debt.

Mortgage, ¶ 2.

■ The first issue before us is whether, by taking a security interest in rents, Midfirst has taken a security interest in property other than property which is the Debtor's principal residence, thereby taking the mortgage outside the protection of the anti-modification provision of section 1322(b)(2). The debtor argues that rents are additional collateral separate from the real estate, while Midfirst argues otherwise. As explained below, we agree with Midfirst on this point.

Several of our colleagues have ruled that, for purposes of section 1322(b)(2), rents are considered real property and therefore, a mortgagor's inclusion of a security interest in rents does not constitute a security interest in property other than a debtor's principal residence. *Steslow v. Citicorp Mortgage, Inc. (In re Steslow)*, 225 B.R. 883, 884–85 (Bankr.E.D.Pa.1998); *Rodriguez v. Mellon Bank, N.A. (In re Rodriguez)*, 218 B.R. 764, 776 (Bankr.E.D.Pa.1998). Accordingly, our colleagues have held that a mortgagee who takes a security interest in rents is entitled to the protection of the section 1322(b)(2) anti-modification provision. *Id.; see also Citicorp Mortgage, Inc. v. Hirsch (In re Hirsch)*, 166 B.R. 248, 251–52, 254 (E.D.Pa.1994); *In re Wilkinson*, 189 B.R. 327, 329–330 (Bankr. E.D.Pa.1995); *Marine Nat'l Bank v. Northwest Pennsylvania Bank & Trust Co.*, 308 Pa.Super. 154, 454 A.2d 67 (1982). We find our colleagues' reasoning on this issue persuasive and hold that Midfirst's retention of a security interest in rents does not constitute additional collateral and does not remove Midfirst's mortgage from the anti-modification protection of section 1322(b)(2). *See also In re Rosen*, 208 B.R. 345, 349–50 (D.N.J.1997); *In re Eastwood*, 192 B.R. 96 (Bankr.D.N.J.1996).

■ The second issue deals with whether the inclusion of the language cited above, which requires that Debtor pay Midfirst funds sufficient to cover the taxes and insurance on the property, created a security interest in the escrowed funds. We conclude that no such security interest was created. To begin, we note that the mortgage does not purport to create a security interest in the escrowed funds. Rather, the mortgage merely states that Debtor is required to escrow the taxes and insurance "to more fully protect the security of the mortgage", meaning that to more fully protect Midfirst's secured interest in the residence, Debtor would be required to escrow taxes and insurance. The mortgage does not state that Midfirst was obtaining a security interest in the escrowed funds and no such security interest was created. Moreover, the language which delineates how the funds paid by Debtor to Midfirst would be allocated also does not create a security interest in the escrowed funds. Rather, this language merely de-

scribes how the funds (which includes the principal and interest on the indebtedness as well as the insurance and tax escrow) paid by Debtor to Midfirst would be allocated. Because we find that the mortgage in issue did not grant a security interest in the escrowed funds to Midfirst, we need not address the issue of whether the mortgage would protected under section 1322(b)(2) if such a security interest had been created. *See generally Rosen*, 208 B.R. at 351–54; *Rodriguez*, 218 B.R. at 777–78; *In re Libby*, 200 B.R. 562, 566–67 (Bankr.D.N.J.1996).

In conclusion, we hold that Midfirst's claim is secured only by a security interest in property that is Debtor's principal residence and, as such, Midfirst's mortgage is protected by the section 1322(b)(2) anti-modification provision and cannot be bifurcated. An appropriate Order follows.

### ORDER

AND NOW, this 14th day of April, 1999, it is ORDERED that JUDGMENT ON THE COMPLAINT IS ENTERED IN FAVOR OF DEFENDANT as the court finds that Defendant's mortgage is protected by the anti-modification provision contained in 11 U.S.C. § 1322(b)(2) and cannot be bifurcated.