IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Darlene Harris,                     :
                    Appellant       :
                                    :
        v.                          :        No. 99 C.D. 2021
                                    :        No. 100 C.D. 2021
City of Pittsburgh, William Peduto  :        Argued: October 21, 2021
and City of Pittsburgh Ethics       :
Hearing Board                       :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE J. ANDREW CROMPTON, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                               FILED: December 28, 2021


        Darlene Harris appeals two orders issued by the Allegheny County
Court of Common Pleas (trial court). The first order denied Harris's request for a
declaratory judgment that the City of Pittsburgh's (City) campaign finance ordinance
was preempted by state law. The second order entered judgment against Harris in
the amount of $4,150 for her violation of the City's campaign finance ordinance. On
appeal, Harris argues that this ordinance is preempted by the Pennsylvania Election
Code,[1] and, further, the trial court lacked jurisdiction to enter judgment against her
on the civil penalty imposed under the ordinance. For the reasons to follow, we
affirm.

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§2600-3591.

## Background

The City is governed by the Home Rule Charter and Optional Plans Law (Home Rule Law), 53 Pa. C.S. §§2901-2984. As a city of the second class, the City is also governed by the Second Class City Code.[2]

In October 2015, the City enacted Ordinance 2015-38, codified as Chapter 198 of the Pittsburgh Code,[3] to regulate the campaign finances of candidates for City office. Chapter 198 has adopted the political contribution limits adopted by the Federal Election Commission. PITTSBURGH CODE §198.02. Chapter 198 also requires candidates to report all campaign contributions. Relevant here, the ordinance states as follows:

> (1) Candidates for City elected office and candidate committees shall, on the first business day of each of the three (3) months prior to election day, provide a campaign finance report, for all candidate committees associated with the candidate for any office sought, in the form mandated by the regular Allegheny County Board of Elections pre-primary reporting forms and procedures to the City's Ethics Hearing Board.

PITTSBURGH CODE §198.05(1). "Candidate" is defined as: "(a) Any individual who files nomination papers or petitions for City elected office; [or] (b) Any individual who publicly announces his or her candidacy for City elected office." PITTSBURGH CODE §198.01. Chapter 198 authorizes the City of Pittsburgh Ethics Hearing Board (Ethics Board) "to hear complaints from City … residents regarding violations of [Chapter 198 of the Code]" and to "use all of its powers to investigate and adjudicate these alleged violations in accordance with its normal administrative procedures and powers." PITTSBURGH CODE §198.06(3). The Ethics Board "may levy a fine of up

---

[2] Act of March 7, 1901, P.L. 20, *as amended*, 53 P.S. §§22101-28707.
[3] City of Pittsburgh, Pa., PITTSBURGH CODE §§198.01-198.08 (2015).

to fifty dollars ($50.00)/day for the late filing of reports required under Section 198.05 of this Chapter." *Id.* §198.06(4).

In 2006, Harris was elected to City Council for District 1. On February 11, 2019, the Ethics Board notified Harris, a Democratic candidate for City Council in the 2019 primary election, of the requirement to file campaign finance reports and the deadlines therefor. Harris informed the Ethics Board that she would "not be filing campaign finance reports with the City" because Chapter 198 conflicted with "existing campaign finance laws at the state level, [i]n violation of the doctrine of preemption." Reproduced Record at 17a (R.R. __). When Harris did not file the required campaign finance report by the first deadline of March 1, 2019, the Ethics Board notified her that she would be fined under Section 198.06(4) of the Pittsburgh Code and that the fine would accrue daily until she filed the report.

Accordingly, on March 12, 2019, Leanne Davis, Executive Manager of the Ethics Board, filed a complaint against Harris for not filing the required campaign finance report on March 1, 2019. Prior to the hearing scheduled for May 23, 2019, Harris filed a motion to dismiss the complaint, arguing that Chapter 198 of the Pittsburgh Code was preempted by the Election Code, the sole law governing the campaign finances of candidates for municipal office. A hearing officer denied Harris's motion to dismiss.

On May 15, 2019, the Ethics Board subpoenaed Harris to appear at the May 23, 2019, hearing. Harris did not appear, but her counsel attended the hearing on her behalf. The parties stipulated to the admission of certain exhibits, including the hearing officer's decision on Harris's motion to dismiss, the subpoena issued to Harris, and the calculation of the fine. Harris's counsel did not submit any evidence

but, instead, argued that Chapter 198 of the Pittsburgh Code was illegal and unconstitutional.

On September 27, 2019, the Ethics Board issued an adjudication holding that Harris had violated Section 198.05 of the Pittsburgh Code. The Ethics Board penalized her $50 for each day between the date Harris's report was due, March 1, 2019, and the date of the hearing on May 23, 2019, for a total penalty of $4,150. On October 1, 2019, the Ethics Board notified Harris that she had 30 days to pay the fine and how to perfect an appeal. Harris neither paid the fine nor appealed the adjudication.

On November 1, 2019, the City filed a petition to confirm the Ethics Board's order of September 27, 2019, and requested the trial court to enter judgment in the amount of $4,150 against Harris.[4] In her answer to the City's enforcement petition, Harris stated that the City's campaign finance ordinance was preempted. In addition, Harris initiated a civil action seeking declaratory and injunctive relief against the City, William Peduto, Mayor of the City, and the Ethics Board,[5] arguing that Chapters 197[6] and 198 of the Pittsburgh Code violated article VII, section 6 of the Pennsylvania Constitution,[7] the Election Code, and the Home Rule Law. The two matters were consolidated by the trial court.

---

[4] A petition to confirm is an application made to the common pleas court requesting the court to confirm the agency's order and enter a judgment or decree in conformity with the agency's order. The common pleas courts receive petitions to confirm arbitration awards. *See* 42 Pa. C.S. §7342(b); *Mikkilineni v. Indiana County Commissioners*, 986 A.2d 185 (Pa. Cmwlth. 2009).

[5] Additionally, Harris named the Ethics Board's Executive Manager, Leanne Davis, in her complaint, but Davis was dismissed as a party by the trial court's order dated December 19, 2019.

[6] PITTSBURGH CODE §§197.00-197.20. Chapter 197 is the City's Code of Conduct applicable to public officials and employees. It also establishes the Ethics Board and its powers and duties.

[7] PA. CONST. art. VII, §6. It states, in part, "[a]ll laws regulating the holding of elections by the citizens, or for the registration of electors, shall be uniform throughout the State[.]" *Id*.

On January 19, 2021, the trial court denied Harris's request for declaratory judgment, concluding that she had waived her preemption claim because she did not appeal the Ethics Board's adjudication. Trial Court Op., 1/19/2021, at 3; R.R. 409a. Nevertheless, the trial court then addressed the merits of Harris's preemption claim and rejected it. The trial court reasoned that the City's Home Rule Charter gives the City broad powers, including the power to regulate campaign finances of candidates for City office. In support, the trial court relied upon the Pennsylvania Supreme Court's decision in *Nutter v. Dougherty*, 938 A.2d 401 (Pa. 2007) (*Nutter II*), which held that a City of Philadelphia ordinance regulating the campaign finances of candidates for city office was not preempted by the Election Code.

Then, on January 20, 2021, the trial court entered judgment in favor of the City and against Harris in the amount of $4,150. It did so under authority of Section 931(a) of the Judicial Code, which authorizes courts of common pleas to enforce civil penalties imposed by a government agency. 42 Pa. C.S. §931(a).

Harris appealed the trial court's orders of January 19, 2021, and January 20, 2021. On appeal,[8] Harris raises four arguments. First, she argues that the trial

---

[8] Where there was a full record before a local agency and the trial court did not take additional evidence, we review the decision of the local agency rather than that of the trial court. *Yannone v. Town of Bloomsburg Code Appeal Board*, 218 A.3d 1002, 1006 n.6 (Pa. Cmwlth. 2019). This Court will affirm the local agency unless constitutional rights were violated, an error of law was committed, the procedure before the agency was contrary to statute, or a necessary finding of fact was not supported by substantial evidence. *Id.* Whether a municipal ordinance is preempted by state law raises a question of law over which our standard of review is *de novo* and our scope of review is plenary. *Huntley & Huntley, Inc. v. Borough Council Borough of Oakmont*, 964 A.2d 855, 863 (Pa. 2009). Finally, for a declaratory judgment action, this Court's review determines whether the trial court's findings are supported by substantial evidence, whether an error of law was committed, or whether the trial court abused its discretion. *Kelso Woods Association, Inc. v. Swanson*, 692 A.2d 1132, 1134 (Pa. Cmwlth. 1997).

5

court erred in holding that she waived her right to challenge Chapter 198 of the Pittsburgh Code on grounds of preemption by not appealing the Ethics Board's adjudication. Second, she argues that the trial court erred in holding that Chapter 198 was not preempted by the Election Code. Third, she argues that the trial court erred in holding that it had jurisdiction over the City's enforcement petition. Fourth, she argues that the trial court erred in not addressing her challenge to the Ethics Board's civil penalty as excessive.

**Analysis**

We begin with a review of the relevant principles of law. Preemption is a judicially created doctrine based on the proposition that a municipality, as an agent of the state, cannot act contrary to the state. *Hartman v. City of Allentown*, 880 A.2d 737, 747 (Pa. Cmwlth. 2005). "[E]ven in areas over which municipalities may have been granted the power to act, the state may bar local governing bodies from legislating in a particular field." *Hoffman Mining Company, Inc. v. Zoning Hearing Board of Adams Township, Cambria County*, 32 A.3d 587, 593 (Pa. 2011). "However, the mere fact that the General Assembly has enacted legislation in a field does not lead to the presumption that the state has precluded all local enactments in that field; rather, the General Assembly must clearly evidence its intent to preempt." *Id*. There are three types of preemption: (1) express, (2) conflict, and (3) field preemption. *Id*. at 593-94. The Pennsylvania Supreme Court has explained that the General Assembly has expressly preempted local laws in three areas: alcoholic beverages, anthracite strip mining, and banking. *Id.* at 593.

Pennsylvania courts disfavor preemption except where "the Commonwealth has explicitly claimed the authority itself, or unless there is such actual, material conflict between the state and local powers that only by striking

6

down the local power can the power of the wider constituency be protected." *United Tavern Owners of Philadelphia v. School District of Philadelphia*, 272 A.2d 868, 871 (Pa. 1971).

With this background, we turn to Harris's appeal.

**I.**

In her first issue, Harris argues that the trial court erred in holding that she waived the issue of preemption by not appealing the order of the Ethics Board. She argues that because she raised preemption before the Ethics Board in her motion to dismiss, she preserved the issue. Harris explains that because the Ethics Board did not have the competency to decide the validity of Chapter 198, she did not have to exhaust her administrative remedy, including an appeal. Harris Brief at 14 (citing *HIKO Energy, LLC v. Pennsylvania Public Utility Commission*, 209 A.3d 246, 261 (Pa. 2019)). Harris explains that she raised preemption in her response to the City's enforcement petition, and this was her first opportunity to litigate the issue before a tribunal with jurisdiction to rule on the question. Further, because she raised a facial challenge to Chapter 198, the existence of a statutory remedy did not preclude her declaratory judgment action.

The City responds that Harris's failure to appeal the Ethics Board's adjudication precluded her from raising preemption either in her defense to the City's enforcement action or in her separate declaratory judgment action. Further, the City contends that the doctrine of collateral estoppel bars her from relitigating the issue of preemption; she should have appealed the Ethics Board's denial of her motion to dismiss.

In support, the City observes that the Ethics Board sent Harris a letter with its adjudication that stated, in relevant part, that "[r]egarding the appeals

process[,] this process is set forth in the City Code and Local Agency Law,[9] as applicable." R.R. 59a. Section 197.12(i) of the City Code provides:

> *Appeal.* Any party aggrieved by final decisions made by the Ethics Hearing Bord has the right to file an appeal within thirty (30) days pursuant to Local Agency Law[,] 2 [Pa.] C.S. [§§751-754].

PITTSBURGH CODE §197.12(i). *See also* PITTSBURGH CODE §197.12(c)(7) ("The subject of the hearing shall have a right to appeal therefrom in accordance with law and general rules."). Section 752 of the Local Agency Law states:

> Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

2 Pa. C.S. §752. Section 753(a) of the Local Agency Law provides:

> A party who proceeded before a local agency under the terms of a particular statute, home rule charter, or local ordinance or resolution shall not be precluded from questioning the validity of the statute, home rule charter or local ordinance or resolution in the appeal, but if a full and complete record of the proceedings before the agency was made such party may not raise upon appeal any other question not raised before the agency (notwithstanding the fact that the agency may not be competent to resolve such question) unless allowed by the court upon due cause shown.

2 Pa. C.S. §753(a). In sum, Harris could have raised the constitutionality of Chapter 198 in a Local Agency Law appeal, but she chose not to do so.

---

[9] 2 Pa. C.S. §§551-555, 751-754.

Harris explains that she did not pursue a Local Agency Law appeal because she did not believe that the Ethics Board would enforce its order. However, the Ethics Board's history of not pursuing the collection of campaign finance penalties is irrelevant. *See generally Korsunsky v. Housing Code Board of Appeals, City of Harrisburg*, 660 A.2d 180 (Pa. Cmwlth. 1995) (city's failure to enforce demolition order against prior owners did not preclude enforcement of that order against subsequent owner); *Ridley Township v. Pronesti*, 244 A.2d 719 (Pa. 1968) (township not bound by prior land use decisions).

Alternatively, Harris argues that because the Ethics Board lacked jurisdiction to adjudicate the validity of its enabling legislation, she did not have to exhaust her statutory remedy. She notes that in *Borough of Green Tree v. Board of Property Assessments, Appeals and Review of Allegheny County*, 328 A.2d 819, 825 (Pa. 1974), our Supreme Court held that a litigant challenging the constitutionality of a statute need not exhaust his administrative remedy, particularly where the evidentiary hearing will not advance a resolution of the constitutional question. Harris argues that under *Borough of Green Tree*, she was free to pursue her constitutional challenge in a declaratory judgment action.

The City responds that Harris's declaratory judgment action was barred by the doctrine of administrative finality. Under this doctrine, "[a] party cannot avoid the requirement to exhaust administrative remedies merely by raising a constitutional challenge to the validity of a statute[.]" *Larry Pitt & Associates, P.C. v. Butler*, 785 A.2d 1092, 1099 (Pa. Cmwlth. 2001). This Court has explained that "[t]he doctrine of administrative finality precludes a collateral attack of an administrative action where the party aggrieved by the action foregoes [her] statutory appeal remedy." *Department of Environmental Protection v. Peters*

9

*Township Sanitary Authority*, 767 A.2d 601, 603 (Pa. Cmwlth. 2001). The City contends that Harris's failure to exhaust her statutory appeal barred her from raising preemption in either proceeding before the trial court. We agree.

Declaratory relief is not available with respect to any "[p]roceeding involving an appeal from an order of a tribunal." 42 Pa. C.S. §7541(c). *See J.B. Steven, Inc. v. Board of Commissioners of Wilkens Township*, 643 A.2d 142, 147 (Pa. Cmwlth. 1994) (appeal of local agency order by declaratory judgment is not allowed). Harris did not appeal the Ethics Board's adjudication, where she could have raised the constitutionality of the ordinance. Harris cannot pursue the same relief in a declaratory judgment action. *Id*. The "failure to appeal a local governmental agency adjudication within 30 days from the date of the order complained of divests the trial court of jurisdiction." *Lundy v. City of Williamsport*, 584 A.2d 1339, 1340 (Pa. Cmwlth. 1988).

We hold that Harris waived the issue of preemption by not appealing the Ethics Board's adjudication. Therefore, she was precluded from pursuing a declaratory judgment action and from raising preemption in her defense of the Ethics Board's enforcement petition.

**II.**

In her second issue, Harris argues that the City's campaign finance ordinance is invalid because the Election Code cannot be supplemented by local ordinance. Although the issue is waived, the Court will address it.

Chapter 198 of the Pittsburgh Code requires City candidates to file campaign finance reports on the first business day of each of the three months prior to election day. By contrast, the Election Code requires municipal candidates to file one pre-election report and one post-election report. Section 1626(d), (e) of the

Election Code, added by the Act of October 4, 1978, P.L. 893, 25 P.S. §3246(d), (e). Using the 2019 election cycle as an example, an individual who announced her candidacy for city office in January 2019 would file campaign finance statements and reports in accordance with the following schedule:

| Report | Section 198.05(1) of the Code | Report | Sections 1626 and 1627 of Election Code |
|--------|------------------------------|--------|------------------------------------------|
| #1 | March 1, 2019 | | |
| #2 | April 1, 2019 | | |
| #3 | May 1, 2019 | | |
| | | #1 | May 10, 2019 |
| PRIMARY ELECTION: MAY 21, 2019 | | | |
| | | #2 | June 20, 2019 |
| #4 | September 2, 2019 | | |
| #5 | October 1, 2019 | | |
| | | #3 | October 25, 2019 |
| #6 | November 1, 2019 | | |
| GENERAL ELECTION: NOVEMBER 5, 2019 | | | |
| | | #4 | December 5, 2019 |
| | | #5 (Annual) | January 31, 2020 |

*See generally* Hearing Officer's Decision, 5/22/2019, at 15; R.R. 45a. Chapter 198 requires six reports in the course of an election cycle, and the Election Code requires five reports.

Municipalities have "the right and power to frame and adopt home rule charters." PA. CONST. art. IX, §2. "A municipality which has a home rule charter may exercise any power or perform any function not denied by [the Pennsylvania] Constitution, by its home rule charter or by the General Assembly at any time." *Id*. This Court has stated that "the Home Rule Law is broadly construed, and any uncertainty is resolved in favor of the municipality and against statutory limits on the municipality's power." *St. Fleur v. City of Scranton* (Pa. Cmwlth., No. 112 C.D.

11

2020, filed October 26, 2020) (unreported),[10] slip op. at 4. There are limits. For example, Section 2962(a)(5) of the Home Rule Law states that "the home rule charter shall not give any power or authority to the municipality contrary to or in limitation or enlargement of powers granted by statutes which are applicable to a class or classes of municipalities: [t]he registration of electors and the conduct of elections." 53 Pa. C.S. §2962(a)(5). Section 2962(c)(2) also states that a municipality shall not "[e]xercise powers *contrary to or in limitation or enlargement* of powers granted by statutes which are applicable in every part of this Commonwealth." 53 Pa. C.S. §2962(c)(2) (emphasis added). The question is whether Chapter 198 of the Pittsburgh Code is contrary to the Election Code.

In *Nutter v. Doughterty*, 921 A.2d 44 (Pa. Cmwlth. 2007) (*Nutter I*), *aff'd*, *Nutter II*, Michael Nutter, a candidate for mayor of Philadelphia, sought a declaratory judgment that all candidates for that office were required to abide by the city's ordinance on campaign contributions and reports.[11] The Philadelphia ordinance limited the amount of campaign contributions by individual donors and by political action committees, and it defined a candidate as one who has filed nomination papers for city office or one who has publicly announced his candidacy. Additionally, the ordinance required candidates to file campaign finance reports with the Philadelphia Board of Ethics. The lower court held that the city's ordinance was

---

[10] Under Section 414(a) of this Court's Internal Operating Procedures, an unreported opinion may be cited for its persuasive value. 210 Pa. Code §69.414(a).

[11] The candidates filed answers denying that they took illegal campaign contributions, and they filed new matter raising the preemption defense. Additionally, one of the candidates filed a counterclaim alleging that Nutter had violated the city's home rule charter provision that prohibits any city officer or employee from being a candidate for public office without first resigning his city office, which the lower court subsequently dismissed as moot because Nutter had resigned his City Council seat.

preempted by the Election Code because elections are required to be uniform throughout the Commonwealth. *Id.* at 48. On appeal, this Court reversed.

We reasoned, first, that the Election Code did not contain an "express preemptive mandate." *Id.* at 60. The Election Code regulates the political committees of municipal candidates and requires them to file reports of financial contributions that exceed $250 and to report on the disbursement of funds. Section 1626 of the Election Code, 25 P.S. §3246. Notably, the Election Code has conferred enforcement authority on both county boards of elections and district attorneys. Accordingly, this Court stated as follows:

> That being determined, a thorough review of the Election Code itself demonstrates a legislative intent to establish and maintain uniform procedures for the purpose of holding fair elections and obtaining honest election returns, *and it becomes evident that this legislative scheme intended inter-governmental coordination and cooperation with local governments in accomplishing its purposes so long as the local governments' acts are not inconsistent with the statute*. Because there is no indication of legislative intent to preempt the field of campaign finance as it relates to campaign contribution limits for local elective office, the Court concludes that the [o]rdinance is not preempted by state statute. Notably, all … campaign contributions received or the amount of expenses incurred relate solely to legislative establishment of threshold limits for public disclosure purposes.

*Nutter I*, 921 A.2d at 60-61 (emphasis added) (citations and footnote omitted).[12]

The Supreme Court affirmed. It also rejected the argument that because the Election Code did not impose limits on campaign contribution amounts, this silence expressed an intention that such limits are not permitted in any Pennsylvania

---

[12] Harris does not challenge the campaign contribution limits in Chapter 198 of the Pittsburgh Code. Rather, the focus of her appeal challenges the requirement in the City Code to file campaign finance reports.

election, thereby prohibiting municipalities from imposing such limits through legislation. The Supreme Court stated that "a home rule municipality's exercise of its local authority is not lightly intruded upon, with ambiguities regarding such authority resolved in favor of the municipality." *Nutter II*, 938 A.2d at 414. The Supreme Court found neither field nor conflict preemption with respect to Philadelphia's campaign finance ordinance.

Harris argues that *Nutter* is distinguishable because it involved a campaign finance ordinance enacted by a City of the First Class, and Pittsburgh is a City of the Second Class. This distinction means that Philadelphia's board of elections is governed by the city commissioners. *Committee of Seventy v. Clark* (Pa. Cmwlth., No. 611 C.D. 2017, filed September 11, 2017) (unreported), slip op. at 5-6 n.7 (city commissioners to continue to exercise "[a]ll the powers, duties and functions of the City Commissioners in their capacity as the County Board of Elections relating to the conduct of primaries and elections"). Harris explains that here, by contrast, candidates for City office must file petitions and campaign finance reports with the Allegheny County Board of Elections, which has no connection to the City. Accordingly, Harris contends that the Elections Code preempts Chapter 198 under both field and conflict preemption. We disagree.

*Nutter I* is dispositive of field preemption. The General Assembly has "enacted the Election Code to regulate the electoral process so that it is both orderly and fair." *Commonwealth v. Beck*, 810 A.2d 736, 746 (Pa. Cmwlth. 2002). This legislative scheme "intended inter-governmental coordination and cooperation with local governments in accomplishing its purposes so long as the local governments' acts are not inconsistent with the statute." *Nutter I*, 921 A.2d at 61.

14

The provisions of Chapter 198 of the Pittsburgh Code and the Election Code are different. The Election Code requires candidates for municipal office and their political committees to file pre-election and post-election reports. Section 1626(d), (e) of the Election Code, 25 P.S. §3246(d), (e).[13] Pre-election reports are to be filed not later than the second Friday before the election, and post-election reports shall be filed not later than 30 days after the election. *Id.* Additionally, Section 1627(a) of the Election Code[14] requires local candidates and political committees to file an annual report by January 31, and they must use forms promulgated by the Department of State.[15] 25 P.S. §3247(a). Chapter 198 requires candidates for the office of Mayor, City Controller, and City Council and their committees to file campaign finance reports on the first business day of each of the

---

[13] It states:

> (d) Pre-election reports by candidates for offices to be voted for by the electors of the State at large and all political committees, which have expended money for the purpose of influencing the election of such candidate, shall be filed not later than the sixth Tuesday before and the second Friday before an election, provided that the initial pre-election report shall be complete as of fifty (50) days prior to the election and the subsequent pre-election report shall be complete as of fifteen (15) days prior to the election. *Pre-election reports by all other candidates and political committees which have received contributions or made expenditures for the purpose of influencing an election shall be filed not later than the second Friday before an election, provided that such report be complete as of fifteen (15) days prior to the election.*
>
> (e) *All candidates or political committees, required to file under this section, shall also file a post-election report not later than thirty (30) days after an election which shall be complete as of twenty (20) days after the election.* In the case of a special election the post-election report shall be complete as of ten (10) days after such special election.

25 P.S. §3246(d), (e) (emphasis added).

[14] Added by the Act of October 4, 1978, P.L. 893.

[15] *See* https://www.dos.pa.gov/VotingElections/CandidatesCommittees/CampaignFinance/Documents/o5o_forms_online/cf_report.pdf (last visited December 27, 2021).

three months prior to election day and to use the City's forms. PITTSBURGH CODE §198.05(1).

These reporting differences do not present an irreconcilable conflict. The candidate for City office can comply with both Chapter 198 and the Election Code. *Hoffman Mining Company, Inc.*, 32 A.3d at 603-07 (300-foot setback for surface mining operations in state statute did not preempt local 1000-foot setback because local setback did not conflict with purpose of state statute); *Mars Emergency Medical Services, Inc. v. Township of Adams*, 740 A.2d 193, 195-96 (Pa. 1999) (local government may generally make additional regulations beyond those in state statute if they are consistent with and advance the state statute).

In sum, the Pennsylvania Constitution and the Home Rule Law gave the City broad powers to legislate. *See Nutter I*, 921 A.2d at 63. In the Election Code, the legislature did not express the intention to assume exclusive jurisdiction over the field of campaign finance of candidates for municipal office. Further, a candidate for City office can comply with both Chapter 198 and the Election Code.

Accordingly, the trial court did not err in holding that Chapter 198 is not preempted by the Election Code.

## III.

Next, Harris argues that the trial court erred in holding that it had jurisdiction over the Ethics Board's enforcement petition under Section 931 of the Judicial Code.[16] Section 931(a) gives the courts of common pleas "unlimited

---

[16] It states:

> (a) General rule.--Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this Commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and

16

original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage" except where exclusive original jurisdiction of an action or proceeding is vested in another court of this Commonwealth. 42 Pa. C.S. §931(a).

Here, the Ethics Board sought to confirm its final order that imposed a fine on Harris for violating Chapter 198 of the Pittsburgh Code. The action was properly before the trial court because "unlimited original jurisdiction of all actions and proceedings" includes proceedings to enforce a local agency order. *Stanton Land Company v. City of Pittsburgh*, 33 Pa. D. & C. 2d 756 (1963) (court enforced order of city's human relations commission directing the sale of land); *see also, e.g.*, *Lawrence County v. Pennsylvania Labor Relations Board*, 469 A.2d 1145 (Pa. Cmwlth. 1983) (common pleas court had jurisdiction to enter order granting the labor board's petition to enforce final order). Further, during the public hearing before the Ethics Board, Harris's attorney acknowledged that the trial court was the

proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas.

(b) Concurrent and exclusive jurisdiction.--The jurisdiction of the courts of common pleas under this section shall be exclusive except with respect to actions and proceedings concurrent jurisdiction of which is by statute or by general rule adopted pursuant to section 503 vested in another court of this Commonwealth or in the magisterial district judges.

(c) Venue and process.--Except as provided by section 5101.1 (relating to venue in medical professional liability actions) and Subchapter B of Chapter 85 (relating to actions against Commonwealth parties), the venue of a court of common pleas concerning matters over which jurisdiction is conferred by this section shall be as prescribed by general rule. The process of the court shall extend beyond the territorial limits of the judicial district to the extent prescribed by general rule. Except as otherwise prescribed by general rule, in a proceeding to enforce an order of a government agency the process of the court shall extend throughout this Commonwealth.

42 Pa. C.S. §931.

proper venue for the Ethics Board to enforce the fine. Hearing Transcript (H.T.), 5/23/2019, at 12-13; R.R. 378a-79a.[17]

There is no merit to Harris's argument that the trial court lacked jurisdiction over the City's petition to confirm the Ethics Board's civil penalty.

**IV.**

Lastly, Harris argues that as a City of the Second Class, the City has been barred from enacting an ordinance that imposes a penalty in excess of $300 per occurrence. The City's fine of $4,150 violates this provision.

Section 3 of the Second Class City Code authorizes the City:

> To make all such ordinances, by-laws, rules and regulations, not inconsistent with the Constitution and laws of this Commonwealth, as may be expedient or necessary, in addition to the special powers in this section granted, for the proper management, care and control of the city and its finances, and the maintenance of the peace, good government and welfare of the city, and its trade, commerce and manufactures, and the same to alter, modify and repeal at pleasure; and *to enforce all ordinances by inflicting penalties upon inhabitants or other persons for the violation thereof, not exceeding three hundred dollars ($300) for any one offence*, recoverable with costs, together with judgment of imprisonment, not exceeding ninety days, if the amount of said judgment and costs shall not be paid.

53 P.S. §23158 (emphasis added). Chapter 198 prescribes the penalty for failing to file the required campaign finance reports as follows:

---

[17] At the public hearing, Harris's attorney stated:

> The remedy today, as was the remedy two years ago, is across the street. It is the Court of Common Pleas. I question the veracity and intent of the enactment of this ordinance by the failure of the administration to take the next appropriate step when we refused to pay the fine two years ago, specifically to take us across the street and enforce the fine levied by this body.

H.T., 5/23/2019, at 12-13; R.R. 378a-79a.

18

The Ethics Hearing Board may levy a fine of up to fifty dollars ($50.00)/day for the late filing of reports required under Section 198.05 of this Chapter.

PITTSBURGH CODE §198.06(4). The rules of statutory construction state that "[w]henever a penalty or forfeiture is provided for the violation of a statute, such penalty or forfeiture shall be construed to be for each such violation." 1 Pa. C.S. §1930. The question is whether Harris's failure to file the required campaign finance report was a single offense or a series of identical offenses.

Section 198.06(4) of the Code authorizes a fine of $50 per day, which makes each day the campaign finance report is not filed a separate offense. Stated otherwise, each day that Harris delayed in filing the report due on March 1, 2019, constituted a separate occurrence. The Ethics Board's fine was not excessive under the Second Class City Code.

### Conclusion

We hold that Harris' preemption claims have been waived because she did not appeal the Ethics Board's adjudication. Further, the trial court was the appropriate tribunal to enforce the fines imposed by the Ethics Board. Finally, the amount of the fine was not excessive and duly authorized. Accordingly, we affirm the orders of the trial court.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Darlene Harris,                          :
                    Appellant            :
                                         :
            v.                           :        No. 99 C.D. 2021
                                         :        No. 100 C.D. 2021
City of Pittsburgh, William Peduto       :
and City of Pittsburgh Ethics            :
Hearing Board                            :

# **O R D E R**

AND NOW, this 28th day of December, 2021 the orders of the Allegheny County Court of Common Pleas dated January 19, 2021, and January 20, 2021, in the above-captioned matters are AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita